## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JENNIFER NICOLE PRICE,

      Petitioner,

v.                                                          Case No. 3:22-cv-5379-MCR-MJF

RICKY DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Jennifer Nicole Price, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 16. Price replied. Doc. 18. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Price is not entitled to habeas relief.[1]

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On May 17, 2018, Price was charged in Escambia County Circuit Court Case No. 2018-CF-002338, with four crimes: (1) Trafficking in Amphetamine or

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Methamphetamine (28 Grams or More, Less than 200 Grams); (2) Possession of a Controlled Substance (Synthetic Cannabinoid); (3) Possession of Drug Paraphernalia; and (4) Driving While License Revoked as a Habitual Traffic Offender. Doc. 16, Ex. A at 7-9.[2] Prior to trial, the State nolle prossed Count 2. Ex. A at 49.

Price went to trial on the remaining charges on December 10-11, 2018, and was found guilty as charged. Ex. A at 29 (Verdict); *Id*. at 49-58 (J. & Sentence). The trial court sentenced Price on Count 1 to 10 years of imprisonment with a 7-year mandatory minimum. Ex. A at 49-58. On Counts 3 and 4, the trial court sentenced Price to 1 year in the county jail and 60 days in the county jail, respectively, to run concurrent with Price's 10-year sentence. *Id*. at 49-58. On January 6, 2020, the First DCA affirmed the judgment without written opinion. *Price v. State*, 286 So. 3d 252 (Fla. 1st DCA 2020) (per curiam) (Table) (copy at Ex. F).

Price filed two motions to modify or reduce sentence under Florida Rule of Criminal Procedure 3.800(c). Ex. A at 78; Ex. H. Both motions were denied. Ex. A at 80; Ex. I.

---

[2] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 16. The court cites the lettered exhibit followed by the page number according to the number at the bottom-most center of the page.

On May 19, 2020, Price filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which she subsequently amended. Ex. J at 6-19 (Mot.); *Id*. at 23–36 (Am. Mot.). The state circuit court summarily denied relief. Ex. J at 37–59. The First DCA affirmed without written opinion. *Price v. State*, 319 So. 3d 627 (Fla. 1st DCA 2021) (per curiam) (copy at Ex. M). The mandate issued July 19, 2021. (Ex. N).

Price filed her federal habeas petition on April 28, 2022. Doc. 1. The petition raises two claims: a trial-court error claim and an ineffective-assistance-of-trial-counsel claim. *Id*. at 3–5. The State asserts that Price is not entitled to habeas relief because she procedurally defaulted her first claim, and she fails to satisfy § 2254(d)'s demanding standard for the claim she properly exhausted. Doc. 16.

## II. RELEVANT LEGAL PRINCIPLES

### A.    Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730 (2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731–32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at

1732 (alteration adopted) (quoting 28 U.S.C. § 2254(b)(1)(A)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of h[er] federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In other words, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

When a petitioner fails to exhaust her federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *Boerckel*, 526 U.S. at 839–40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (alteration adopted) (internal quotation marks and citations omitted).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012). A petitioner establishes "cause" by showing that an objective factor external to the defense impeded an effort to properly raise the claim in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A petitioner establishes "prejudice" by showing at least a reasonable probability that the proceeding's result would have been different. *Id.* at 892.

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted h[er]." *Schlup*, 513 U.S. at 327. The *Schlup* standard is very difficult to meet:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error

with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that that was not presented at trial.

513 U.S. at 327.

## B.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring).

---

[3] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court first must determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases

where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 . . . (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

### III.    DISCUSSION

**<u>Ground One</u>**        **<u>"The trial court erred in denying Petitioner's Motion for Judgment of Acquittal; a violation of the 5th and Fourteenth Amendments of the U.S. Constitution." Doc. 1 at 3.</u>**

Price claims that the trial court erred when it denied her motion for judgment of acquittal because (1) the proof of Price's guilt "was wholly circumstantial;" and (2) the State "did not present any evidence that was entirely inconsistent with a reasonable hypothesis of innocence." Doc. 1 at 3–4. Price asserts that she exhausted this claim by presenting it in her direct appeal. *Id*. at 4; Doc. 18 at 2.

The State maintains that to the extent Price's claim can be construed as raising a *federal constitutional* claim—as opposed to a state-law issue—the claim is procedurally defaulted because Price did not present the issue as a federal claim at trial or on direct appeal. Doc. 16 at 15–19.

### A.   *Price Procedurally Defaulted Her Federal Sufficiency-of-the-Evidence Claim*

Liberally construing Price's petition as raising a federal constitutional challenge to the sufficiency of the evidence (through her labeling of the claim), federal habeas review is not available because that claim is procedurally defaulted.[4] Price's direct appeal brief presented the issue as a purely state-law question and did not fairly apprise the First DCA of a federal constitutional claim.

Federal habeas courts "do not require a verbatim restatement of the claims brought in state court," but the claims that the prisoner presented to the state court must allow "a reasonable reader [to] understand each claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks and citation omitted). The Supreme Court has stated that a petitioner can indicate the federal-law basis for her claim "by citing in conjunction with the claim the federal source of law on which [s]he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A habeas petitioner does *not* exhaust her

---

[4] To the extent Price challenges her conviction on state-law grounds, that claim is not cognizable on federal habeas review. Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotation marks and citations omitted)).

state remedies by merely (1) going through the state courts; (2) presenting to the state courts all the facts necessary to support the federal claim; or (3) presenting to the state courts "a somewhat similar state-law claim." *McNair*, 416 F.3d at 1302 (internal quotation marks and citation omitted).

Price's claim on direct appeal was that the State failed to meet Florida's heightened burden of proof in cases involving circumstantial evidence. Ex. C. Price's appellate counsel summarized the claim as follows:

> The trial court erred in denying Ms. Price's motion for judgment of acquittal for trafficking in methamphetamine and possession of drug paraphernalia. The State did not provide sufficient evidence to defeat her reasonable hypothesis of innocence.

Ex. C at 9. Price argued that the State's proof of her possession of methamphetamine "was wholly circumstantial," and that the State "did not present any evidence that was entirely inconsistent with a reasonable hypothesis of innocence that she did not place those substances in her purse." Ex. C at 11-14. Price made the same argument with regard to her possession of drug paraphernalia. *Id*.

As the Eleventh Circuit recognized in *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449 (11th Cir. 2015), an argument based on Florida's circumstantial evidence rule involves a different, higher standard than the federal *Jackson* standard. *Preston*, 785 F.3d at 451; *see also Jackson v. Virginia*, 443 U.S. 307, 324–26 (1979). In *Preston*, the court explained the difference between a federal sufficiency-of-the

evidence claim, and a state-law claim based on Florida's circumstantial evidence rule:

> [I]n cases turning on circumstantial evidence, the Florida standard for assessing a sufficiency of the evidence challenge differs greatly from the federal standard. While Florida may apply the *Jackson* standard in resolving an ordinary sufficiency claim, *see, e.g., Melendez v. State*, 498 So.2d 1258, 1261 (Fla. 1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," *Thorp v. State*, 777 So.2d 385, 389 (Fla. 2000) (per curiam) (quotation omitted). It is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id*. (quotation omitted); *see, e.g., Lowe v. State*, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a moral certainty every hypothesis but that of his guilt").

> It is precisely the Florida rule, however, that the Supreme Court has rejected as a matter of federal law. In *Jackson*, the case upon which Preston rests his entire sufficiency of the evidence challenge, the Court instructed that a petitioner is entitled to relief under the Due Process Clause only if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S. Ct. 2781. Under federal law, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id*. at 326, 99 S. Ct. 2781. This remains true even when the only evidence relied on is "circumstantial evidence in the record." *Id*. at 324, 99 S. Ct. 2781. Thus, in cases involving circumstantial evidence, whether a defendant raises his sufficiency claim in terms of state or federal law can matter a great deal.

> Preston invoked and relied upon Florida's unique rule for convictions based on circumstantial evidence in challenging his conviction. . . . The Florida Supreme Court had no opportunity to even consider federal law, because, as we've explained, Preston never once

raised *Jackson*, the *Jackson* standard, any federal cases, the Due Process Clause or any other constitutional provisions, or, indeed, even referenced the word "federal" in his briefing on this claim.

Any federal claim that Preston could have brought would have been judged by a different standard than the state claim he actually did bring.

*Preston*, 785 F.3d at 460–61. The court concluded that habeas petitioners whose direct appeal briefs relied exclusively on Florida's "heightened burden of proof in cases involving circumstantial evidence"—as Price did here—do not exhaust a federal sufficiency-of-the-evidence claim. *Preston*, 785 F.3d at 451.

Here, as in *Preston*, Price's direct appeal brief did not say, or even suggest, that her claim was a federal claim about due process. Her direct appeal brief cited state-law cases exclusively and all of her substantive arguments addressed Florida's circumstantial evidence standard. None of the state cases Price cited were decided on federal grounds. Price made no reference to the United States Constitution or federal law, and she cited no federal cases, let alone *Jackson v. Virginia*. Nothing in Price's direct appeal argument would have alerted the First DCA to the presence of a federal claim about due process or the Fourteenth Amendment. *See Baldwin*, 541

U.S. at 32; *Preston*, 785 F.3d at 451, 460-61.[5] Thus, Price failed to exhaust her federal due process claim.

Price is barred by state procedural rules from returning to state court to exhaust a *Jackson*-based insufficient-evidence claim. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Price's federal constitutional claim, therefore, is procedurally defaulted.

**B.    *Price Has Not Overcome Her Procedural Default***

Price makes none of the required showings to excuse her procedural default. Price's procedural default bars federal habeas review of Ground One.

**<u>Ground Two</u>**        **<u>"Violation of Petitioner's 6th Amendment Right to Effective Assistance of Counsel for misadvice resulting in her rejection of a favorable plea offer; a violation of her Fourteenth Amendment right as well." Doc. 1 at 4.</u>**

Price claims that her trial counsel provided ineffective assistance with regard to a plea offer. Doc. 1 at 4–5. Price alleges that prior to trial, the State made "a favorable plea offer of seven (7) years in the Florida Department of Corrections." Doc. 1 at 4. Price alleges that on an unspecified date, "defense counsel visited with the Petitioner and advised her of a break in her case consisting of a 'break in the

---

[5] Predictably, the State's answer brief in Price's direct appeal similarly relied exclusively on state statutes and state decisional law, and made no reference to a federal constitutional standard. *See* Ex. D.

chain of evidence' that the State had against the Petitioner." *Id*. at 5. According to Price, counsel "was positive in this break that she had discovered and was encouraging the Petitioner that this would seriously diminish the State's case against her." *Id*. at 5. Price alleges that based on this advice, she rejected a 7-year plea offer and went to trial, where she ultimately received a 10-year sentence. *Id*.

The State maintains that Price is not entitled to habeas relief because the state court adjudicated this claim on the merits, and Price fails to satisfy § 2254(d)'s demanding standard. Doc. 16 at 20-29. The State also argues that Price's claim fails even on *de novo* review. *Id*. at 27-29.

### A.   *The State Court's Decision*

Price presented this claim to the state courts as the sole claim of her amended Rule 3.850 motion. Ex. J at 25-27, 30-32. The state circuit court denied relief as follows:

> Defendant alleges that her counsel was ineffective for misadvising her to reject the State's plea offer of a seven-year minimum mandatory sentence. Defendant contends that counsel told her there was a "break in the chain of evidence" that would "require the most significant charges to be dropped" and "would seriously diminish the State's case against her."FN4 Defendant claims that but for this misadvice, she would have accepted the plea offer, and received a lesser sentence than the 10-year incarcerative sentence, with the 7-year minimum mandatory term imposed for count one.

> FN4 To the extent Defendant attempts to allege that her counsel did not thoroughly investigate, and Defendant did not understand her minimum and maximum exposure to

incarceration, both of these claims are facially insufficient and summarily denied.

Defendant is simply incorrect. On November 28, 2018, Assistant State Attorney Frederick Longmire clarified on the record that he had not made a plea offer in this case for the seven-year minimum mandatory term. Instead, Mr. Longmire inquired of Defendant's counsel if she would be interested in such a plea if it were made, but Defendant was not interested.FN5 Consequently, the record shows that the State *did not* make a formal plea offer to Defendant. Counsel cannot be ineffective for advising Defendant to proceed to trial when a plea offer did not exist. Defendant is not entitled to relief.

FN5 See Attachment 3, Transcript, November 28, 2018, p. 3.

Ex. J at 38.

The First DCA summarily affirmed without explanation. Ex. F. The First DCA's summary affirmance is an "adjudication on the merits" of Price's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100.

## B.   *Clearly Established Federal Law*

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "*If a plea bargain has been offered*, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168 (emphasis added). The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 566 U.S. at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that

counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134 (2012) (applying *Stricklan*d's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52 (1985) (applying *Strickland*'s two-part test to defendant's challenge to guilty plea based on ineffective assistance of counsel).

Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S., at 57 (quoting *Strickland*, 466 U.S. at 688). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that h[er] counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).

Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

In the context of plea negotiations, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. Defendants must also, however, "complete [their] showing of *Strickland* prejudice" by demonstrating that "if the prosecution had the discretion to cancel [the plea offer] or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because *a defendant has no right to be offered a plea*, nor a federal right that the judge accept it." *Frye*, 566 U.S. at 148–49 (emphasis added) (citations omitted). The Supreme Court summarized in *Lafler*:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Page 18 of 31

566 U.S. at 164.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## C.    *Price Is Not Entitled to Habeas Relief*

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does

provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Price's claim for the reasons articulated by the state circuit court.

Price disputes the state court's factual finding that the State did not make her a formal plea offer of 7 years in prison. Doc. 18 at 7–8. Price relies on the transcript of the pretrial hearing held on November 28, 2018. *Id*. at 8.

For background, an *earlier* pretrial hearing was held on September 24, 2018. Defense counsel Janette Richardson described the status of plea negotiations:

> MS. RICHARDSON:  Ms. Price has asked the State for drug court and I believe that the State's answer is, no.
>
> MR. LONGMIRE [Prosecutor]:  That's correct, Judge.
>
> MS. RICHARDSON:  So Ms. Price would like to set if for a contested hearing.
>
> THE COURT:  Okay. She's got two – is it two cases?
>
> MR. LONGMIRE:  She does, Judge. One is a new-law case.
>
> THE CUORT:  Does that form the basis of the VOP?
>
> MR. LONGMIRE:  . . . I mean, it does, it is a component for the violation of probation, the most serious component.
>
>      . . . .

> If I – if I may, Judge. I think it may just be more appropriate to set it for trial, if she doesn't want to enter a plea. She has a mandatory minimum of seven years on the trafficking count.

Ex. A at 87-88. The trial court set Price's case for another pretrial, and the hearing concluded with this remark by the prosecutor:

> MR. LONGMIRE:  The only other thing I'd put on the record, Judge, is if the Defense wants to talk about any other type of offer besides drug court, the State may be willing to entertain that; but, the only thing they've asked about is drug court, the State's not in favor of that.

Ex. A at 90.

At the next pretrial hearing, held on November 28, 2018, Price was represented by Assistant Public Defender Steven Bayhi, who had stepped in for Richardson. This discussion took place:

> MR. BAYHI:  Your Honor, Steve Bayhi for Jennifer Price. Again, this is Ms. Richardson's case. I know I discussed a plea offer with Ms. Price and she rejects it.
>
> THE DEFENDANT:  Yes.
>
> MR. BAYHI:  And –
>
> THE COURT:  Okay.
>
> MR. BAYHI:  – was talking to –
>
> THE COURT:  Ready for trial?

MR. BAYHI:  – there was some mention that the State maybe was going to offer Keeton.[6]

THE DEFENDANT:  He said, programs. Last time we were in court, you said any other programs that he had to counteroffer, you would be willing to listen to, but –

MR. LONGMIRE:  I'm always –

THE DEFENDANT:  – you denied me drug court.

MR. LONGMIRE:  – I'm always willing to listen, but that doesn't mean I would agree to it.

She had a mandatory minimum seven years state prison, Judge, so –

THE COURT:  Is that about the – from the amount of stuff she had?

MR. LONGMIRE:  She had over – yes, sir, Judge. She had over 28 grams of methamphetamine. She's also on probation in 17-CF-17812. I'll ask that the cases be handled at the same time. The reason we'll handle it at a trial instead of simply at a violation of probation hearing is because the mandatory minimum is over the length of time for which she's on probation, so . . .

On the VOP, she can only get five and she had a mandatory minimum on the new law.

MR. BAYHI:  And you made an offer.

MR. LONGMIRE:  The offer was for the man-min of seven years. She apparently does not want to take that offer.

THE DEFENDANT:  No.

---

[6] Keeton is an inpatient substance abuse treatment program. *See, e.g., Campbell v. State*, 939 So. 2d 242, 243 (Fla. 1st DCA 2006) (discussion of the Keeton program).

MR. BAYHI:  Here's one that I had down here.

MR. LONGMIRE:  I didn't make that as an offer.

MR. BAYHI:  You did?

MR. LONGMIRE:  I did not. I inquired of Ms. Richardson as to whether her client would be interest[ed] in that at all. What I'm being told by you all is, no.

MR. BAYHI:  Apparently – apparently, she's not.

Ex. A at 93–94.

Fairminded jurists reviewing the foregoing transcripts could disagree over whether the State made a formal plea offer for 7 years, or merely tested the water to see if Price "would be interest[ed] in that at all." But when there is room for reasonable disagreement, a federal court must *defer* to the state court's factual finding. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (If "[r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." (internal quotation marks and citation omitted)). "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [the petitioner's factual claim],' and when a state court's finding was 'clearly erroneous[.]'" *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (first alteration in original) (quoting *Miller–El v. Dretke*, 545 U.S. 231, 265 (2005); and then quoting

*Wiggins v. Smith*, 539 U.S. 510, 528–29 (2003)). Price has not satisfied § 2254(d)(2)'s standard to overcome the state court's factual finding.

Deferring to the state court's factual finding—that the State never actually made Price a plea offer—the state court's rejection of Price's ineffective assistance claim was a reasonable application of the Supreme Court's holdings in *Strickland*, *Lafler* and *Frye*. Price, therefore, is not entitled to habeas relief on Ground Two.

Even if the District Court were to conclude that the state court's critical factual determination was unreasonable, Price's claim fails on *de novo* review. Price's allegations fail to satisfy the *Strickland* standard for several reasons.

First, Price has pointed to nothing in the record that indicates she was willing to accept a plea offer of 7 years in prison. The pretrial transcripts reveal, to the contrary, that Price thought a 7-year prison sentence was grossly unreasonable, and that Price was unwilling to consider anything beyond inpatient drug treatment. Price's present allegation—a bare, after-the-fact assertion that she would have accepted a 7-year plea offer—is insufficient to establish prejudice under *Strickland*. *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [the] desire to plea, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the defendant] would have accepted the plea offer."); *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1319 (11th Cir. 2013) ("A willingness to accept something more favorable than what is offered does

Page 24 of 31

not indicate a willingness to accept what is offered."); *Lopez v. Sec'y, Fla. Dep't of Corr.*, No. 21-11076, 2022 WL 1613546, at *2 (11th Cir. May 23, 2022) (rejecting, on *de novo* review, ineffective-assistance claim based on counsel's alleged advice not to accept a plea offer; the petitioner "point[ed] to nothing in the record that indicated that he had an intent to plead guilty."); *Jones v. Sec'y, Fla. Dep't of Corr.*, No. 21-13448, 2023 WL 334386, at *3 (11th Cir. Jan. 20, 2023) (same) ("While Jones now claims that he would have accepted the offer once he knew that the insanity defense was not viable, there is little evidence in the record that shows that's true.").

Additionally, Price fails to establish that her decision to reject the alleged plea offer *was caused by misadvice from Richardson*. Price grounds her claim on these vague allegations:

> Prior to accepting the offer that was given by the State, defense counsel visited with the Petitioner and advised her of a break in her case consisting of a "break in the chain of evidence" that the State had against the Petitioner. Counsel was positive in this break that she had discovered and was encouraging the Petitioner that this would seriously diminish the State's case against her.
>
> Depending on this advice from counsel, the Petitioner rejected the State's offer and moved on to trial. . . .

Doc. 1 at 5.

These allegations do not support a finding of deficient performance or prejudice. Price relates a single alleged conversation about trial strategy, but she does not reveal what counsel's *plea advice* was.

Moreover, Price's description of this single conversation is vague and devoid of context. It is impossible to relate it to facts in the record. This, in turn, renders it impossible to assess (1) the reasonableness of counsel's statements and (2) the likelihood that counsel's statements caused Price to reject a 7-year plea offer.

For example, if, by "a break in the chain of evidence," Price is referring to a break in the chain of custody of physical evidence, she fails to identify what link was broken, what evidence was effected, and what tampering was suspected.[7] *See* Exs. A, B. Moreover, Price fails to explain how or why she believed this theory "seriously diminish[ed] the State's case against her" to the point where she rejected a 7-year plea offer—she simply states that it did.

---

[7] The phrase "break in the chain of custody" arises in claims of evidence tampering. *See Taplis v. State*, 703 So. 2d 453, 454 (Fla. 1997) ("[O]nce evidence of tampering is produced, the proponent of the evidence is required to establish a proper chain of custody or submit other evidence that tampering did not occur."). In Florida, "[a] mere break in the chain of custody is not in and of itself a basis for exclusion of physical evidence. Rather, the court should consider the probability that the evidence has been tampered with during the interim for which it is unaccounted." *Bush v. State*, 543 So. 2d 283, 284 (Fla. 2d DCA 1989); *see also Murray v. State*, 838 So. 2d 1073, 1082 (Fla. 2002).

If, by "a break in the chain of evidence," Price is referring to her theory of defense, her allegations concerning the timing and effect of this alleged conversation with counsel do not square with the record. Price's defense theory was that the State's evidence—that she knowingly possessed the methamphetamine—was wholly circumstantial and insufficient to overcome the reasonable hypothesis that one of the passengers in Price's vehicle put the methamphetamine in her purse without her knowing it. *See* Ex. B.

The record establishes, however, that the facts underlying this defense were known to Price and counsel from the beginning. The arrest report described that (1) the methamphetamine was discovered in the vehicle Price was driving, on the front-seat armrest between Price and her male front-seat passenger; (2) the male front-seat passenger was under the influence of an unknown narcotic; (3) a capped hypodermic needle was found on the front-passenger seat; and (4) the male passenger in the back seat directly behind Price attempted to conceal his face. *See* Ex. A at 10-13 (Arrest Report). Thus, the defense theory—that one of the passengers could have put the drugs in Price's purse without her knowing it—was not borne out of a "discovery" of a "break" in the case that suddenly would have changed Price's willingness to consider a 7-year plea offer.

In short, Price's claim that counsel's "misadvice" caused her to reject a 7-year plea offer is stated in the vaguest of terms based on an ambiguous, confusing

premise. Measuring Price's allegations against her burden under *Strickland*, they fall far short of showing that (1) counsel's conduct regarding plea negotiations was objectively unreasonable, and (2) but-for that conduct there is a substantial likelihood Price would have forgone a trial and agreed to a 7-year prison sentence.

Courts consistently have denied ineffective-assistance claims that are based on vague and conclusory allegations. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (explaining that it "take[s] more than supposition on [a] weak premise[ ] offered by [a habeas petitioner] to undermine a court's confidence in the outcome"); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (rejecting ineffective-assistance claims that were nothing more than "unsupported allegations, conclusory in nature and lacking factual substantiation"); *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1221–22 (11th Cir. 2022) (same, where petitioner offered only "bald assertions" to support his ineffective-assistance claim); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012) (rejecting as conclusory ineffective-assistance claims alleging that counsel failed to develop mitigating evidence; the petition "completely failed to detail what mitigating evidence should have been developed, and, failed to provide the kind of evidence that may warrant relief under *Strickland*."); *Wilson v. Sec'y, Fla. Dep't of Corr.*, 769 F. App'x 825, 827 (11th Cir. 2019) ("[I]neffective assistance of counsel cannot be proven via

conclusory assertion—but that is all [the petitioner] offered." (citing *Boyd*, 697 F.3d at 1333-34)).

For all of the foregoing reasons, Price is not entitled to habeas relief on Ground Two.

## IV.  A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching

Page 29 of 31

the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Jennifer Nicole Price*, Escambia County Circuit Court Case No. 2018-CF-002338, be **DENIED**.

2.    The District Court **DENY** a certificate of appealability.

3.    The clerk of court close this case file.

At Pensacola, Florida, this <u>10th</u> day of March, 2023.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**